[See Case No. 17,076.]

---

WALKER (LOCKWOOD v.). See Case No. 8,451.

WALKER (McCORMICK v.). See Case No. 8,728.

---

## Case No. 17,078.

### WALKER v. MARKS et al.

[2 Sawy. 152.] [1]

Circuit Court, D. California.  Feb. 11, 1872. [2]

MEXICAN LAND GRANTS—ALCALDE GRANTS—TIDE LANDS.

1. The alcaldes of San Francisco had no power to grant lands below low-water mark, covered by the navigable waters of the bay.

2. The term "tide lands," as used in the act of May 14, 1861, means lands covered and uncovered by the tides, and does not include lands lying below low-tide mark, and permanently covered by the navigable waters of the bay or ocean.

[Cited in Andrus v. Knott, 12 Or. 501, 8 Pac. 763.]

3. The act of May 14, 1861, does not confirm the grants made by T. M. Leavenworth, alcalde, of lands lying in the Bay of San Francisco, below low-water mark, and permanently covered by the navigable waters of the bay.

Action to recover lands. The premises in controversy are a portion of the bay of San Francisco, being permanently covered by the navigable waters of the bay at low tide. They lie in front of the city of San Francisco, and would be bounded by Montgomery, Chestnut, Sansome and Francisco streets, if those streets, as originally laid out, should be extended. They lie wholly outside of the water front of San Francisco, as established by the act of March 26, 1851, entitled "An act to provide for the disposition of certain property of the state of California." The plaintiff [James D. Walker] claims title under two grants made by Alcalde Leavenworth, in 1848, one to Miles L. Calender, the other to Wm. S. Clarke; and the "act to provide for the sale of the marsh and tidelands of this state," approved May 14, 1861, which, it is insisted by the plaintiff, confirms said alcalde grants. The defendants [John J. Marks and others] constitute the board of state harbor commissioners, elected under the provisions of an "act to provide for the improvement and protection of the wharves, docks and water front in the city and county of San Francisco," approved April 23, 1863; and an act amendatory thereof, and supplementary thereto, approved March 5, 1864. Said acts extend the water front by widening the streets fronting on the bay, so as to embrace a portion of said premises, and authorize the said board of state harbor commissioners to take possession of the water front, and that portion of the bay adjacent thereto, to the extent of six hundred feet beyond the said water front, as established by the act of March 26, 1851; to construct streets on the water front; also, wharves, docks, etc., and thereby improve the facilities for commerce, and generally to manage the same in behalf of the state, for the benefit of the public. The defendants took possession of the said premises under the authority contained in said act, and for the purposes therein described.

McAllisters & Hambleton, for plaintiff.

Thomas P. Ryan, for defendant.

SAWYER, Circuit Judge. The only question in this case is, whether the alcalde grants to Calender and Clarke were confirmed by the said act of May 14, 1861. It has long been settled by the supreme court of the state of California, that grants by former alcaldes of San Francisco, of portions of the navigable waters of the bay of San Francisco are void, for want of authority in the officer assuming to make them. This is no longer questioned; and it is not even claimed in this case, that the grants under which plaintiff claims, inde-

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[2] [Affirmed in 17 Wall. (84 U. S.) 650.]

pendent of the statute referred to, were valid. But plaintiff relies upon the said statute, as confirming and validating these grants. The title of the act is, "An act to provide for the sale of the marsh and tide lands of this state;" and the first section is in the words following:

"Section 1. The sales of all marsh and tide lands belonging to this state, that have been made in accordance with the provisions of any of the acts of the legislature, providing for the sale of the swamp and overflowed lands belonging to this state, are hereby ratified and confirmed; and any of said marsh and tide lands that remain unsold, may be purchased under the provisions of the laws now in force, providing for the sale of swamp and overflowed lands of this state; and all moneys derived from the sale of such lands, shall be paid into the state swamp land fund, to be used for the reclamation of the swamp and overflowed lands; provided, no marsh or tide lands located within five miles of the city and county of San Francisco, or of the city of Oakland, or within one mile and one half of the state prison grounds, at Point San Quentin, shall be sold or purchased, by authority of this act; and, provided, further, that no sales of lands, either tide or marsh, excepting alcalde grants, which are hereby ratified and confirmed, within five miles of said cities, or within one mile and one half of the state prison grounds aforesaid, shall be confirmed by this act." Stat. 1861, 363.

It will be seen, both by reference to the title, and the body of the act, that the subject matter upon which this statute is to operate is, "marsh and tide lands belonging to this state," nothing else.

It is not pretended that the premises were "marsh lands," within the meaning of the act. They must, therefore, be "tide lands," or they are not embraced within the subject matter upon which the act is to operate. Are they "tide lands," within the meaning of the act? The construction to be given to these terms, has also been settled by the supreme court of this state in an action relating to these very lots, in which the defendants claimed title under this same act, as confirming said alcalde grants. The court, upon a very elaborate examination of the question, held that the term "tide lands," as used in the act embraces only those lands which lie between high and low-water mark, and constitute the shore of the bay; those lands which are covered and uncovered by the tide. People v. Davidson, 30 Cal. 380, 384, 387. This construction was, also, approved in Rondell v. Fay, 32 Cal. 364, where the court say: "The descriptive phrase 'tide lands' occurs for the first time in the legislation of this state, in the act of May 13, 1861; and it is applied to lands covered and uncovered by the ordinary tides."

These cases have not since been questioned by the court, and the construction of the term "tide-lands," as used in this act, must be regarded as settled by the tribunal, whose decision is authoritative upon the point, and

binding upon this court, it being the construction of a state statute by the highest tribunal of the state.

A large number of statutes passed by the various legislatures, from 1859 to 1869–'70—some having been passed at each session—have been called to the attention of the court in connection with extrinsic evidence relating to two or three of them, as to the character of the land embraced in the several descriptions, with a view of inducing this court to re-examine the question already determined by the supreme court of the state, in the light of what is claimed to be the legislative construction put upon the term "tide-lands." I have examined these several acts, and, if it were admissible to re-examine the question, and overrule the decisions of the state supreme court, in my judgment, the several acts, upon the whole, sustain the view already established, rather than overthrow it. Besides, nearly all of those acts are private acts, granting a right to build a wharf extending into the bay, for a limited period of time, or some other franchise, with the right to use the adjacent lands for purposes of the franchise, and are, of course, usually drafted by the parties interested, and the language used designating the various classes of lands is not very carefully scrutinized, since it is intended at all events to run to deep water. The grants, in all cases, except, perhaps, in one or two acts, passed during the last two sessions, apply to specific tracts of land, and consequently, refer to a different subject matter from that embraced in the general act of 1861, under consideration. They cannot in any just sense, therefore, be regarded as in pari materia.

If it is proper at all to examine the acts of subsequent and different legislative bodies, with a view of ascertaining the sense in which a former legislature first used certain words in a statute, the subsequent acts referred to passed under the circumstances indicated, are entitled to but very little weight in this investigation. However this may be, those subsequent acts afford the plaintiff little aid, for they are at least not inconsistent with the construction adopted by the state supreme court, and some of the principal ones, manifestly use the terms in the same sense adopted by that court.

For example, take the two acts in connection with which extrinsic testimony was given by plaintiff, to show the character of the land embraced within the description—the act of April 19, 1862, granting land to Henry Owens, upon which to construct a marine railway, and the act of May 2, 1862, authorizing J. J. North and associates to construct a marine railway. Section one of the first act grants to Owens certain lands by specific boundaries, also, designated generally, as "submerged or tidal lands." And section two provides that Owens "shall have the right to reclaim the tidal lands comprising the lots four hundred and forty-six, and four hundred and sixty-one." The testimony shows that within the specific boundaries described in the first section, and therein gen-

erally designated as "submerged or tidal lands," there are lands which lie below ordinary low-water mark, that is to say, permanently "submerged," or covered by the navigable waters of the bay, also, lands lying above ordinary low-water mark—lands covered and uncovered by the ordinary tides. But lots four hundred and forty-six and four hundred and sixty-one, specially mentioned in section two, and therein designated as "tidal lands," without the word submerged, are shown by the testimony to be entirely above low-water mark. Thus by applying the term "tidal lands," alone, without the word "submerged," to these two specific lots, the legislature itself defines the term "tidal lands," as used in that act, and applies it to the lands embracing the shores which are covered and uncovered by the ordinary tides, while the word "submerged," in the first section, would be left to embrace the lands lying below low-water mark, and permanently covered by the navigable waters of the bay. Stat. 1862, 308, 309.

So, in the case of the other act, authorizing North and his associates to construct a marine railway. The lands are generally designated as "submerged, tide and marsh-land," followed by a particular description by metes and bounds. The testimony shows that this description embraced both lands permanently "submerged" by the waters of the bay, and lands above ordinary low-water mark, covered and uncovered by the ordinary tides.

This grant, then, contains different classes of lands, and it also uses appropriate words to describe each class. "Submerged land" is a much more appropriate word to designate land permanently covered by water than "tide-lands."

The numerous other acts referred to in most, if not all instances, show, by their specific terms of description, aside from the general designation given to the lands, that the grants extended into deep water; but they all, with perhaps one exception, where the term "tide-lands" is used at all, use other general words of description more appropriate to describe land permanently covered with water, as well as give a particular description, stating the depth of water at low tide, to which the parties were authorized to go, such as "submerged," "overflowed," "submerged and overflowed," "covered with water," and the like, in connection with the words "tide-lands," or "tide and marsh-land." Thus when the legislature grants lands of various classes, some word is used appropriate to each class, as "submerged," "overflowed," or both, or "covered with water," for lands lying below ordinary low-water mark, and permanently covered by water; "tide-lands," or "mud-flats," for lands covered and uncovered by the ordinary tides; and "marsh-land," or "salt-marsh land," for lands bordering on the shore of the bay, above ordinary high-water mark, but covered by the spring tides upon which marine grasses grow.

By far the greater number of these acts, now called to the attention of this court, were passed at the various sessions of the legislature from 1859 to 1866, inclusive, before the decision of People v. Davidson, which decision was rendered at the October term of the supreme court, 1866, and were carefully examined by the court in that case. Many of the leading ones were referred to in the opinion, as examples of the terms used by the legislature in relation to the general subject, as will appear by reference to the case. 30 Cal. 386. The construction given to the term "tide-lands" in that case was adopted in full view of these statutes, and as I had occasion to know, having taken part in the decision, after a thorough examination of the various statutes, and a thorough discussion of the question by the justices of the supreme court.

There have been but two sessions of the legislature since, and the acts passed at those sessions relating to the lands of the state, use the same general terms for similar purposes as the preceding acts, and do not present anything in addition to militate against the construction adopted. If they did, it would scarcely be insisted that acts passed by a different legislature, eight or nine years after the passage of the act of 1861, could be properly invoked to show the intent with which words in the act of 1861 were used, especially after the meaning of those terms had been deliberately settled by the highest judicial tribunal in the state.

The said act of May 14, 1861, provides that "any of said marsh and tide lands that remain unsold, may be purchased under the provisions of the laws now in force providing for the sale of swamp and overflowed lands." And the act of May 13, 1861, "to provide for the reclamation and segregation of swamp and overflowed lands and salt marsh and tide lands, donated to the state of California by act of congress"—the first act in which the term "tide lands" was used—provides that, "the provisions of this act shall apply equally to all salt, marsh or tide lands in this state, as to swamp and overflowed." Stat. 1861, 361.

If the term "tide lands," as used in these acts, embraces any portion of the lands permanently covered by the navigable waters of the Bay of San Francisco, or of the ocean, they embrace the entire lands under the navigable waters of such bay and ocean, and all the lands permanently covered by the navigable tide waters of the state would be open to purchase and reclamation under these acts.

It would be absurd to suppose that the legislature intended to use the term "tide lands" in so comprehensive a sense, especially so, when the more limited sense is more distinctive, descriptive and appropriate, as well as more reasonable.

If any force is to be given to the title of the said act of May 13, 1861, it would seem that the term "tide lands" in that act, was used in a still more restricted sense; for the title only mentions "salt marsh and tide lands donated to the state of California by the act of congress."

Now, no lands which could in any sense be

termed "tide lands" were ever donated to the state by act of congress, except such as lie above ordinary high water mark and below extreme high water mark, such lands as are covered and uncovered only by the spring tides and upon which marine grasses grow. All below ordinary high water mark are held by the state, by virtue of her sovereignty, and not under donation by act of congress. The legislature certainly could not have intended to include in the term "tide lands," as used in this act, lands permanently covered by the navigable waters of the bay.

I find nothing, then, in the numerous acts called to the attention of the court, to justify me in departing from the construction adopted by the state supreme court. Besides, if the question was new, I should feel constrained, after a careful examination, to adopt the same construction.

The subject-matter of the act in question being "marsh and tide-lands" only, the exception in the act must also be of alcalde grants of marsh and tide-lands. It is of the essential nature of an exception that, "it must be of part of the thing previously described and not of some other thing." The provision is, "and provided further, that no sales of lands, either tide or marsh, excepting alcalde grants, which are hereby ratified and confirmed,"—that is to say, excepting alcalde grants of that class of lands before described, "tide or marsh." No other class of alcalde grants is confirmed. The alcalde grants in question not being of "tide or marsh-lands," as the terms are used in the act, they are not embraced within the exception, and, therefore, are not "hereby ratified and confirmed."

This point was also expressly determined in People v. Davidson. The court say: "The subject-matter of the act is 'marsh and tide-land.' The sales which the act confirms, and the sales which it authorizes thereafter, as well as the sales which it inhibits, are of lands falling within this general description; and as we know of no principle upon which we can extend the subject-matter beyond the limits expressly put upon it, both by the title and the provisions of the act, we consider that the grants intended to be confirmed were alcalde grants of marsh and tide-lands, to the exclusion of all others." 30 Cal. 384, 385.

Aside from the fact that the language of the act does not, in terms, embrace these grants, it is unreasonable to suppose, in view of the fact that a permanent water front had been established by the said act of March 26, 1851, inside of those premises, and that the authorities were bound to "keep clear and free from all obstruction whatsoever, the space beyond the said line to the distance of five hundred yards therefrom," that the legislature, without changing the said water front, intended to confirm grants of lots lying beyond it, in such a position that their reclamation would necessarily obstruct navigation and destroy the water front, as so located, to the injury of the adjacent property-owners and of the public. To accomplish such an object, the legislative intent ought to be very clearly and explicitly manifested. It is not so manifested in this act.

The alcalde grants in question, being originally void, and not being embraced within the provisions of the act of May 14, 1861, conferred no title on the plaintiff. Let judgment be entered for the defendants with costs.

[The above judgment was affirmed by the supreme court, where the cause was carried by writ of error. 17 Wall. (84 U. S.) 650.]