Cutts *v.* Hussey.

---

### Thomas Cutts *vs.* John C. Hussey.

The lands of individuals, lying in common and uninclosed, cannot be understood to be " *commons of the town*," within the meaning of the *stat.* 1834, c. 137, concerning pounds and beasts impounded.

The common law right to impound cattle, damage feasant, is taken away by the *stat.* of 1834, c. 137.

The Provincial *stat.* of 1749, prohibiting cattle from running at large on *Winter-harbor beach*, and charging a committee, to be appointed by the town of *Biddeford*, with the execution of the law, gives to the town no title to the beach, and cannot be considered as evidence that it was then in the town.

Nor can the acts of the committee under the law, give any title in the land to the town.

By the word *beach*, in that statute, is intended the space between the high and low water mark.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J. presiding.

Replevin of two cows, alleged to be the property of the plaintiff, and impounded by the defendant in the town pound in *Biddeford*. The defendant justified the impounding as a fence viewer and field driver of that town, because the cows were taken up running at large, not under the care of a keeper, on *Winter-harbor beach*, alleged to be *commons of Biddeford*; and also because

they were taken up on the commons, and highway, and townway. The plaintiff denied, that the place of taking was commons of the town of *Biddeford*, and insisted that it was the property of individuals. The whole evidence in the case appears in the exceptions, but sufficient will be found in the opinion of the Court, for the proper understanding of the questions of law raised on the exceptions. The Judge ruled, that upon the evidence, that the place of taking by the defendant did not appear to be town commons, or commons, or highway, or townways, and so directed the jury. The verdict was for the plaintiff, and the defendant filed exceptions.

*A. G. Goodwin*, for the defendant.

The justification was good and sufficient, either by force of the *stat.* of 1834, *c.* 137, or on the principles of the common law.

The place where the cattle were taken were *commons of the town of Biddeford.* The meaning and intention of the Legislature was, that the commons of the town should be all lands within the town, unimproved and not enclosed by fences. To show what rules the Courts are governed by in the construction of statutes, these cases were cited. *Terry* v. *Foster,* 1 *Mass. R.* 146 ; *Church* v. *Crocker,* 3 *Mass. R.* 21 ; *Holland* v. *Makepeace,* 8 *Mass. R.* 423 ; *Thomas* v. *Mahan,* 4 *Greenl.* 561 ; *Richards* v. *Daggett,* 4 *Mass. R.* 534 ; *Somerset* v. *Dighton,* 12 *Mass. R.* 383 ; *Holbrook* v. *Holbrook,* 1 *Pick.* 254 ; *Taylor* v. *Delancey,* 2 *Caines' Cases,* 143 ; 4 *Johns. R.* 359 ; 15 *Johns. R.* 358 ; 3 *Tomlin's Jac. Law Dic.* 520. To show that the word *commons* embraces all lands not under improvement, and not enclosed by fences, the following Colonial, Province, and State statutes were cited and commented upon. *Colony Laws, stat. c.* 19 & 78 ; *Province Laws, stat.* 51, 160, 220, 242 ; *Mass. stat.* of 1788, 1789, 1800, 1804 ; *Maine stat.* 1821, *c.* 128, 129, 44 ; *stat.* 1825, *c.* 317 ; *Mass. Rev. Stat. c.* 19, § 22. The *stat.* of 1834, *c.* 137, is equally extensive. Statutes made for the public good are to be so construed as to attain their end. 3 *Jacob's Law Dic.* 524. It is as much for the public good to restrain cattle from all commons, as from such as are owned by the town.

But if this construction be not correct, still the defence is made out, because the *locus in quo* was the town's property. This appears, because the land was originally the town's property, and

there is no evidence of a conveyance; from the Provincial statute of 1749, and the votes of the town, and acts of the committees under them; from acts of ownership by the town, showing title by occupancy. Title is not necessary; mere occupancy is sufficient to justify impounding under the 6th section of the statute of 1834.

But if the statute provisions do not afford a justification, the statute does not repeal the common law; and by the principles of the common law, every person must keep his cattle on his own land. *Rust* v. *Low,* 6 *Mass. R.* 90; *Stackpole* v. *Healey,* 16 *Mass. R.* 33; *Little* v. *Lathrop,* 5 *Greenl.* 356; *Heath* v. *Ricker,* 2 *Greenl.* 408.

*Fairfield & Haines,* for the plaintiff.

The only question in this case is, whether the place of taking is the property of the town of *Biddeford,* or the property of individuals; whether commons of the town, or private property. To constitute land *town commons,* it must be property of the town, to remain common and for public use. The cattle were taken up on the sea wall, which cannot properly be denominated *beach.* Beach is synonymous with *seashore,* and embraces only the land between ordinary high water mark, and low water mark. *Storer* v. *Freeman,* 6 *Mass. R.* 439; 5 *B. & Ald.* 91; *Angell on Tide Waters,* *app.* 95, 162, 166. But if the place of taking was within the limits of the beach, the question then returns, was this the property of the town of *Biddeford,* or of individuals. It is of no importance to what individuals, or whether the plaintiff be one of them or not. First, because the impounding was not for damage to individuals; and second, there was no fence whatever, and by reference to the *stat.* of 1834, c. 137, it will be perceived, that the right to impound depends upon the land being enclosed with "*a legal and sufficient fence.*" *Gooch* v. *Stephenson,* 1 *Shepley,* 371; 3 *Kent's Com.* 438, *note,* remarking on a statute of *Alabama,* similar to our own; *Avery* v. *Maxwell,* 4 *N. H. Rep.* 37, relative to the construction of a similar statute. The *locus in quo* is private property, because it is appurtenant to the upland. The owner of land bounded on the sea owns to low water mark, where the tide does not ebb and flow more than one hundred rods. *Storer* v. *Freeman,* 6 *Mass. R.* 435; *Emerson* v. *Taylor,* 9 *Greenl.* 43. Not only was the title in individuals, but they have possessed the

land for many years, in as full and ample manner, as the nature of the property would admit. *Cook* v. *Godfrey*, 16 *Pick.* 186 ; *Angell on Tide Waters*, 105. The mere fact of the passing of a statute giving governmental power over the rights and property of individuals, which was submitted to without complaint, could give neither to the State nor the town any title to the land. It is against common right for the legislature to give to the town a property in the beach. *Gooch* v. *Stephenson*, 1 *Shepley*, 371 ; *Thomas* v. *Marshfield*, 10 *Pick.* 364 ; 4 *N. H. Rep.* 566 ; *Angell's Tide Waters*, 27. That neither the statute relied on, nor the choosing of officers under it, nor the action of such officers, if any there has been, could prove the property in the beach to be in the town, was recently decided in *Massachusetts*. *Sale* v. *Pratt*, published in the papers.

The case was continued for advisement, and the opinion of the Court was subsequently drawn up by

WESTON C. J.—We do not, upon examination, perceive any sufficient evidence, that the title to the *locus in quo* was in the town of *Biddeford*. It appears, that more than an hundred years ago, *Pendleton Fletcher* conveyed to *Bachelder Hussey* the one half of *Pendleton's* neck, the south side of which is the beach in question, with the marsh and beach. Soon after, *Pendleton* conveyed to his son the remaining half, as far as *Booth's* mill, which included the *locus in quo*. And it appears that the plaintiff, who owns a part of the land derived from the same title, has claimed and exercised over the contiguous beach all the ownership, of which the nature of the property is susceptible. Lots of land were located by the town surveyor, for several succeeding years after 1720, but whether any residuum remained to the town does not appear.

In the division of *Bachelder Hussey's* estate in 1764, certain thatch beds, on the neck, were set off to the heirs by lines, which might exclude the beach, but this did not divest the heirs of their right to any portion of the beach, of which their ancestor died seized. The right of the town is principally based upon a Provincial statute of 1749, prohibiting cattle from running at large on *Winterharbor* beach, and charging a committee, to be appointed by the town of *Biddeford*, with the execution of this law. Some public

object was doubtless intended to be promoted by this regulation. It may have been for the better security of the sea wall, which it may have been apprehended might be injured, by the free range of cattle over and upon it. This was within the scope of legislative power; especially as it does not appear, that any valuable private right was impaired by it. The committee, although elected by the town, acted under public authority, in the discharge of the duties confided to them. The statute certainly gave to the town no title to the beach, nor can we regard it as evidence, that it was their property at the time of its passage. The statute of 1749, expired by its own limitation in 1771, and has not since been renewed. And although the town have continued to choose the committee, required by that law, ever since, and it was proved at the trial, that in a few instances individuals had submitted to their authority, we are unable to discover any legal ground, upon which it can be supported, after the expiration of the statute.

Besides, we do not see how the *locus in quo* can be considered as a part of the beach. It was above high water mark, and within the sea wall. By a beach, is to be understood the shore or strand; and it has been decided, that the seashore is the space between high and low water mark. *Storer* v. *Freeman, 6 Mass. R. 435.*

But although the *locus in quo* was not in the highway, or on any common belonging to the town, it is insisted, that being unin-closed ground, it was a common of the town, within the true intent and meaning of the *statute* of 1834, *c.* 137, under which the defendant justifies. His counsel has, with great industry and ingenuity, gone into an examination of a wide range of statutes in *Massachusetts,* Colonial, Provincial, and under the Commonwealth; together with some passed in our own State. They relate to common fields, to lands lying common and unenclosed, to cattle going at large generally, or going at large on the highways and commons. We have examined them with care; but they do not, in our judgment, justify the conclusion, that by "commons of the town," in the statute of 1834, can be understood the lands of individuals, lying common and unenclosed. It would subject to the penalty of the statute, the cattle of the owner of the land, or the cattle of others, put there by his permission. And if there without permission, it is an invasion of a private right, rather than of a public

regulation. That regulation would be sufficiently vindicated by seizing them, when they stray upon the highways, or commons properly so called. In an earlier stage of the settlement of the country, large tracts belonging to towns, may have remained unappropriated and undivided, to which this term might properly be applied.

As to any right to seize and impound the cattle in controversy, damage feasant, existing at common law, it is expressly abrogated by the statute of 1834, c. 137, when the land is unenclosed. *Gooch* v. *Stephenson*, 13 *Maine R.* 371.

With regard to the title of the town, it does not appear that any facts were in controversy, upon which it depended. Whether upon the evidence exhibited, it was legally made out, was a question of law, which was properly decided by the presiding Judge.

*Exceptions overruled.*