[Filed November 17, 1885.]

## W. H. ANDRUS *v.* A. J. & LEVI KNOTT.

TIDE LANDS.—The term "tide lands" applies to lands covered and uncovered by the ordinary tides, which the State owns by virtue of its sovereignty, and corresponds with the shore or beach, which at common law is that land lying between ordinary high and low water mark.

ID.—It must be such land as is alternately covered and left dry by the ordinary flux and reflux of the tides.

ID.—NAVIGABLE WATERS.—Lands adjacent to navigable waters, where the tide flows and reflows, come within the description, but it cannot be said to apply to lands which are covered with water three fourths of the year.

THE premises in controversy are situated on the margin of the Willamette River at East Portland. At this point, at a low stage of the river, there is a tidal rise and fall of two feet and eight inches, which daily covers and uncovers a space of shore from thirty-seven to fifty feet, during a period of about five months in the year. (Testimony of W. S. Chapman and map.) But as the river rises the space of shore which is alternately covered and uncovered by the ebb and flow of the tide becomes narrower, until at extreme high water the tide rises and falls but a few inches. No part of this shore is daily covered and uncovered by the ebb and flow of the tide during the whole year, the place where the alternate covering and uncovering

takes place shifting with the rise and fall of the water in the river. Upon this ground the Circuit Court held that such land was not tide or overflowed land under the Act of October 26, 1874, granting the title of the State in any tide or over-flowed lands upon the Willamette River to the owners of the abutting lands.

*E. B. Watson,* and *Seymour W. Condon,* for Appellant.

It is plainly intended by the Act of October 26, 1874, to grant some lands; and as lands of this class were all the State owned, at the time, answering any part of the description or coming within the policy of the act, the conclusion is inevitable that they are the lands intended to be granted by the act. The authorities sustain this view. (*Walker* v. *Marks,* 2 Sawy. 152; *People* v. *Davidson,* 30 Cal. 380; *Rondell* v. *Fay,* 32 Cal. 364.)

*H. T. Bingham,* and *Benton Killin,* for Respondents.

The donation claimant, whose claim is bounded by a mean-dered stream, which the Willamette River is, owns everything in the river bed, except the public right of navigation, and the State as trustee of that right cannot give it away, but must hold it perpetually in trust for the public. (*Railroad Co.* v. *Schurmeir,* 7 Wall. 272.) In *Hinman* v. *Warren,* 6 Oreg. 408, this court says tide-lands are "those that are uncovered and covered by the ebb and flow of the sea." And the court by the authorities referred to to sustain its position, evidently meant the mean or daily ebb and flow of the tide. (*Pollard's Lessee* v. *Hagan,* 3 How. 230; *Barney* v. *Keokuk,* 94 U. S. 324.)

LORD, J. — The action was in ejectment. It was brought to recover certain lands claimed to be tide-lands. The court below held that the land in controversy was not such land. It is clear unless the land in dispute is tide-land, or comes within the description of such lands, it is unnecessary to consider the other legal propositions which counsel have discussed as applied to such lands. What is meant by the phrase "tide-lands"? In *Rondell*

v. *Fay*, 32 Cal. 354, it was held that the descriptive phrase "tide-lands," in the legislation of that State, applies to land covered and uncovered by the ordinary tides, which the State owns by virtue of its sovereignty. (*People* v. *Davidson*, 30 Cal. 380; *Walker* v. *Marks*, 2 Sawy. 152.) It would seem to correspond to or be synonymous with "shore" or "beach," and this, at common law, is that land which lies between ordinary high-water mark and low-water mark. (Hale De Jur. 12; Hall Sea Shore, 9; *Bludell* v. *Catterall*, 5 Barn. & Ald. 292.) It must, then, be such land as is affected by the tide, that lies between ordinary high-water mark and low-water mark, and which is alternately covered and left dry by the ordinary flux and reflux of the tides. Lands adjacent to *navigable* waters, where the tide flows and reflows, which at high tides are submerged and at low tides are bare, come within such description. (*Bell* v. *Gough*, 23 N. J. L. 683.) It can hardly be considered as including any ground that does not come within the provisions of this description. It is needless to say that lands covered with water three fourths of the year cannot be considered as such.

The judgment must be affirmed.