[Filed June 13, 1887.]

G.  ELLIOTT, APPELLANT, v.  W.  STEWART ET AL.
RESPONDENTS.

TIDE-LANDS, WHAT ARE.—An isolated sand bank alternately covered and exposed by tides, situated one mile from the Oregon shore in the Columbia River, and entirely disconnected from the main lands, is not tide-land within the meaning of that term.

SAME.—The term "tide-lands" apply to those lands adjoining main land, and periodically covered and uncovered by the rising and falling tides.

APPEAL from Clatsop County.

*Strong & Strong*, for Appellant.

*Fulton Brothers*, for Respondents.

LORD, C. J.—This is a suit in equity to enjoin the defendants from fishing on certain premises described in the complaint, and alleged to belong to the plaintiff.   The defendants denied

the plaintiff's ownership, and alleged that the said premises are a shifting sand-bar in the Columbia River, and only exposed at low tide, being entirely covered with water at high tide, and that said sands or sand-bar have been immemorially resorted to by the ·public for fishing and drawing seines therein, etc. Issue being joined as to this, a trial was had, and a decree was rendered dismissing the plaintiff's complaint. Substantially, the evidence shows that the alleged land is a shifting sand-bar situated in the Columbia River some six miles from the Oregon shore, and about one mile from the Washington Territory shore, and that fishermen have resorted to these sands for many years to fish for salmon. The plaintiff derived his title by deed from the State, purporting to convey to him the premises as tide-land. The inquiry is, whether the State has been authorized by any legislation to dispose of lands of the character in question .

The first act providing for the sale of tide-lands was passed in 1872. It is entitled "An act to provide for the sale of tide and overflowed lands *on the sea-shore and coast.*" Among other things, it provides that "the owner or owners of any land abutting or fronting upon or bounded by the shore of any bay, harbor, or inlet on the sea-coast, shall have the right to purchase from the State," etc. (Laws 1872, p. 129.) This act only authorizes the sale of tide-lands on the sea-shore and coast, bays, harbors, and inlets. It authorizes the owners abutting upon or bounded by the *shore* of any bay or harbor or inlet to purchase, and indicates quite plainly that the lands referred to as tide-lands are what is generally known as the shore or beach. The Act of 1874 was amendatory, and extended the right to purchase tide-lands on the shores of rivers and ocean beach, but the distinction here noted is preserved. The Act of 1878, which seems to be the final legislation upon the subject, provides only for the sale of that which is on the sea-coast, or in front of lands abutting on the ocean, or any bay, harbor, inlet, lake, or water-course. (Laws 1874, p. 76; Laws 1878, p. 42.)

In none of these acts is there any provision for the sale of lands coming within the description of the sands or sand-bar in question. Properly speaking, it cannot be said to be an island;

nor is there any abutting of land to it; but it is uncovered or exposed to the flux and reflux of the tides, though it does not register the high and low-water mark, being submerged six to seven feet at high tide, and laid bare at low tide. In *Andrus* v. *Knott*, 12 Or. 501, it was held that the term "tide-lands" applies to lands covered and uncovered by the tides, which the State owns by virtue of its sovereignty, and corresponds with the shore or beach, which at common law is that land lying between ordinary high and low-water mark. In *People* v. *Davidson*, 30 Cal. 386, Shafter, J., said: "We find nothing in the Act of May 14, 1861, affording the slightest clue to the sense in which the legislature used the words 'tide-lands' therein. . . . . Under such circumstances that definition must be adopted which on the whole is most reasonable; and that is supplied in our judgment by the words 'strand,' 'beach,' or 'shore,' in the common-law sense of the terms. Shore is defined to be land on the margin of the sea or a lake or river; that space of land which is alternately covered and left dry by the rising and falling of the tide; the space between high and low-water mark. It is synonymous with beach, which is the strip of land between high and low-water mark. 'By a beach,' said Weston, J., 'is to be understood the shore or strand. . . . . The word 'beach' must be deemed to be land washed by the sea and its waves, and to be synonymous with shore.'" (*Cutts* v. *Hussey*, 15 Me. 241.) In *East Haven* v. *Hemingway*, 7 Conn. 186, Hosmer, J., said: "The shore is that space of ground which is between ordinary high and low-water mark." And Butler, J., said that "the legal meaning of the term was indisputable." (*Church* v. *Meeker*, 34 Conn. 424; *Storer* v. *Freeman*, 6 Mass. 439.) "Lands belonging to the State by reason of its sovereignty includes the shores of the sea, and its bays and inlets, in the common-law definition of the word 'shore'; that is, the land usually overflowed by neap or ordinary tides." (Shafter, J., in *People* v. *Morrill*, 26 Cal. 353. See, also, *Doane* v. *Willcutt*, 5 Gray, 335.)

Taken in consideration with the language of the acts, and the common-law definition of the words used, and as have been

applied to the statutes of similar purport, it must be apparent that those acts of legislation referred to did not contemplate or authorize the sale of lands of the description in question. It follows that there was no error, and that the decree must be affirmed, except as stipulated as to damages; and it is so ordered.