Argued March 17, decided April 12, 1910.

## TAYLOR SANDS FISHING CO. *v.* STATE LAND BOARD.

[108 Pac. 126.]

NAVIGABLE WATERS—ISLANDS—BED OF STREAM.

1. Under act Feb. 14, 1859, c. 33, 11 Stat. 383, conferring on the State of Oregon on its admission ownership of all that part of the Columbia River lying south of the north boundary of the State, the State, subject to the paramount right of navigation, had power by statute to convey all the islands in the river, or any land forming a part of the bed thereof.

NAVIGABLE WATERS—"HIGH-WATER MARK"—"TIDE LANDS"—ISLANDS.

2. The term "high-water mark" with reference to tide lands is the line on the shore which is reached by the limit of the flux of the usual tide. In a suit to restrain the State Land Board from leasing certain tide lands, it was alleged that plaintiff was engaged in fishing for salmon in the Columbia River, which were hauled upon the shore of the tide lands described, of which plaintiff was the owner by mesne conveyances from the State, and also of the accretions thereto; that a survey had been made of an imperceptible accumulation of land by natural causes in front of plaintiff's land, and that T. had applied to the board for a lease thereof, which, if granted, would prevent plaintiff from pursuing its business. Plaintiff, though alleging that the lands in controversy were covered by water to a depth of four to six feet for a large part of the day, also charged that the land lay between ordinary high and low tide in the river. *Held*, that the land could reasonably be inferred to be tide lands, part of an island, within Laws 1907, p. 206, providing that no accretions to islands previously sold by the State should be leased, and that no tide or overflowed lands except those connected with the shore should be sold until 10 years after the approval of the act.

NAVIGABLE WATERS—TIDE LANDS—SALE—ACCRETIONS.

3. Where tide lands bordering on a navigable river are purchased from the State to obtain places on which to draw seines into shallow water, the law of accretions applies, and the State thereafter has no authority to lease land forming by accretion further out in the river, the effect of which would be to destroy the rights of the grantee of the lands to which that leased was added by accretion.

INJUNCTION—SCOPE OF REMEDY—ACTS OF STATE OFFICERS.

4. Where public officers under color and claim of right are proceeding to impair either public or private rights, or when their proceeding will

result in injury to private citizens without any corresponding benefit to the public, or when the aid of equity is necessary to prevent a multiplicity of suits, an injunction will be allowed against them.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by the Taylor Sands Fishing Company, a corporation, to enjoin F. W. Benson and George A. Steel, constituting the State Land Board of Oregon, from leasing certain real property. The material averments of the complaint are to the effect that the plaintiff, the Taylor Sands Fishing Company, is a corporation, and the defendants, F. W. Benson and George A. Steel, the former being Governor and Secretary of State and the latter the State Treasurer of Oregon, constitute, by virtue of their respective offices, the State Land Board; that plaintiff is engaged in fishing for salmon in the Columbia River with seines, which are hauled to the shore of certain tide lands in Clatsop County, particularly describing the premises, that plaintiff is the owner, by mesne conveyances from the State of Oregon, of these lands and also of the accretions thereto; that M. Troyer caused a survey to be made of such imperceptible accumulation of land by natural causes, and thereupon applied to the State Land Board for a lease thereof; that the defendants, unless restrained, will demise the same to him and his associates, who will operate seines thereon and prevent plaintiff from pursuing its business; that the lease will cast a cloud on its title, and cause a multiplicity of suits; and that it has no plain, speedy, or adequate remedy at law for the redress of its grievances.

A demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of suit, was sustained, a temporary restraining order which had been granted set aside, and the suit dismissed, from which decree the plaintiff appeals.    REVERSED.

For appellant there was a brief over the names of *Messrs. Coovert & Stapleton* and *Mr. C. A. Bell,* with oral arguments by *Mr. E. E. Coovert* and *Mr. Bell.*

For respondents there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Isaac H. Van Winkle,* Assistant Attorney General, and *Mr. George G. Bingham,* Special Counsel.

Opinion by MR. CHIEF JUSTICE MOORE.

1. The adequacy of the complaint being the question to be considered, its averments will be examined. It is alleged that on April 26, 1902, plaintiff's grantor purchased from the State of Oregon the tide lands described. The statute then in force contained a clause as follows: "The State Land Board is hereby authorized to sell tide lands, tide flats not connected with the shore, and all lands held by the State by virtue of her sovereignity." Section 3301, B. & C. Comp. This section was enacted in 1899, probably in consequence of the decision in *Elliott* v. *Stewart,* 15 Or. 259 (14 Pac. 416), in which case it was held that under the prior law, providing for the disposal of State lands, no authority had been conferred to convey the title to sand bars in the Columbia River not connected with the shore. Oregon, on its admission to the Union, February 14, 1859, became the owner of all that part of the Columbia River, a navigable stream, lying south of the north boundary of the State. Act February 14, 1859, c. 33, 11 Stat. 383. Subject to the paramount right of navigation, Oregon, when it was thereafter empowered by enactment could, by its constituted agents, convey any of the islands in that river or any land forming a part of its bed: *Bolsa Land Co.* v. *Burdick,* 151 Cal. 254 (90 Pac. 532: 12 L. R. A. (N. S.) 275) ; *Illinois C. R. R. Co.* v. *Illinois,* 146 U. S. 387, 435 (13 Sup. Ct. 110: 36 L. Ed. 1018). By the clause of the statute hereinbefore set forth, the plaintiff, as the

grantee of the State by mesne conveyances, became possessed of an estate in fee simple in the tide lands described in the complaint, if the averments of that pleading are true as confessed by the demurrer: *State* v. *Portland Gen. Elec. Co.*, 52 Or. 502 (95 Pac. 722: 98 Pac. 160).

2. The title being thus vested, the remaining questions to be considered are whether or not the area of the premises can be augmented by accretions, and, if so, can the defendants, who are officers of the State, be enjoined from leasing such gradual accumulations of the soil. Chapters 2 and 3, title 32, B. & C. Comp., which included Section 3301, were repealed, and another act adopted in lieu thereof. Laws Or. 1907, c. 117. The substituted enactment authorizes the sale or leasing of tide and overflowed lands, and contains a clause as follows: "And it is further provided, no accretions to islands heretofore sold by the State shall be leased and that no tide or overflowed lands, excepting those connected with the shore, shall be sold until ten years after the approval of this act." Section 19. The defendants' counsel, invoking an allegation of the complaint that the tide lands therein described are covered by water to a depth of four to six feet for a large part of each day, insist that the premises are not part of an island, but are a shoal, and, such being the case, the land so designated by metes and bounds cannot be enlarged by accretions. This averment should be construed in connection with another allegation of the plaintiff's pleading, to the effect that it is the owner of all the tide lands so mentioned which are "lying between ordinary high and low tide line in the Columbia River." The common high-water mark, occurring in places where the alternate rising and falling of the ocean and of bays and rivers affected by it twice in each lunar day, means a line on the shore which is reached by the limit of the flux of the usual tide. Interpretating in *pari materia* such clauses, it is reasonably

to be inferred therefrom that the tide lands mentioned are a part of an island.

3. If, however, it should subsequently appear from testimony to be given that such lands constitute a sand bar which is wholly covered by water at each high tide, we do not think the overflow of the premises would render them incapable of enlargement by accretions; for, as was said by Mr. Justice BURCH in *Fowler* v. *Wood,* 73 Kan. 511, 549 (85 Pac. 763, 776: 6 L. R. A. (N. S.) 162: 117 Am. St. Rep. 534) :

"It is not necessary to give a formation on the bed of a river a specific name in order that proprietary rights may attach to it. In many states lands totally or partially submerged are made the subject of grant by the sovereign in order that they may be reclaimed for useful purposes. Islands that arise from the beds of streams usually first present themselves as bars. * * Before it will support vegetation of any kind a bar may become valuable for fishing, for hunting, as a shooting park, for the harvest of ice, for pumping sand, and for many other well-recognized objects of human interest and industry. If further deposits of alluvion upon the borders would make it more valuable, no reason is apparent why the law of accretion should not apply."

When tide lands bordering on a river are purchased from the State for the purpose of obtaining places on which to draw seines into shallow water, so as to take the fish inclosed in these large nets, valuable rights are thus secured; and, if the law of accretions is not applicable to such premises they would soon become worthless to their legal owners, for in every river of moderate flow the current carries sediment which, lodging below obstructions, extends the banks further into the stream. If it were conceded that imperceptible accumulations of soil by natural causes were not a part of such tide lands, it would necessarily follow that each addition thereto of earthy matter would belong to Oregon, and, notwithstanding a prior lease of the alluvion, for the purpose of fishing, had

Sig. 6

been consummated and the term unexpired, the State could let the accretions which always border the stream, thereby rendering valueless the prior disposal, and making a lease for a specific term a tenancy at the will of the lessor. As the consequences supposed would be so disastrous to all tenants but the last, we think reason supports the assertion that the plaintiff is entitled to the accretions, if any have been made, to its tide lands: *Hume* v. *Rogue River Packing Co.,* 51 Or. 237, 243 (83 Pac. 391: 92 Pac. 1065: 96 Pac. 865.)

4. If the defendants, as members of the State Land Board, are unlawfully interfering with the private rights of the plaintiff, equity will intervene, and prevent by injunction a continuance of the injury. High, Injuction, (4 ed.) § 1308. This author, at the section noted, says:

"And it may be stated, as a general rule, that when public officers, under color and claim of right, are proceeding to impair either public or private rights, or when their proceeding will result in serious injury to private citizens, without any corresponding benefit to the public, or when the aid of equity is necessary to prevent a multiplicity of suits, an injunction will be allowed."

As analogous to the principle thus announced, see *Dunn* v. *State University,* 9 Or. 357, 362; and *Salem Mills Co.* v. *Lord,* 42 Or. 82, 90 (69 Pac. 1033: 70 Pac. 832.)

We think the complaint makes out a *prima facie* case against the defendants, and, this being so, the decree is reversed, the demurrer overruled, the temporary injunction restored, subject to the order of the trial court, and the cause remanded for such further proceedings as may be necessary, not inconsistent with this opinion.

REVERSED.