Argued July 11, affirmed October 16, 1923.

# HARDY *v.* CALIFORNIA TROJAN POWDER COMPANY, A CORPORATION.

### (219 Pac. 197.)

**Quieting Title—Failure to Allege and Prove Possession by No One Other Than Plaintiff Fatal, in Suit to Quiet Title to Land not in Another's Possession.**

1. In a suit, under Section 516, Or. L., to quiet title to land not in the actual possession of another, failure to allege and prove that no one other than plaintiff was in possession is fatal.

**Navigable Waters—One Claiming Tide-lands must Show Existence of Land to Which State's Deed Applied.**

2. In a suit to quiet title to tide-land, claimed under the state's grantee, the burden is on plaintiff to show that there was tide-land to which the language of the state's deed applied when executed.

**Navigable Waters—State's Deed to Tide-land must Describe It With Certainty.**

3. To quiet title to tide-lands claimed under the state's grantee, the state's deed must describe the land with sufficient certainty to enable a competent surveyor to establish the boundary lines.

**Navigable Waters—"Tide-land" Defined.**

4. "Tide-land" is land covered and uncovered by the ordinary tides.

**Navigable Waters—Title to Tide-lands Established.**

5. In a suit to quiet title to tide-lands, evidence *held* sufficient to establish the state's conveyance of a stated number of acres then existing to plaintiff's predecessors in interest, and to identify and definitely locate them.

From Columbia: JAMES A. EAKIN, Judge.

Department 2.

This suit was filed by the plaintiff to quiet title to a strip of land described in the complaint, together with averred accretions thereto.

Plaintiff alleged ownership of the real property described in his complaint. He averred that it was not in the actual possession of anyone other than himself, and that defendant claimed some adverse interest in, or estate to, that real property. Plaintiff prayed that the defendant be required to set forth the nature of its claim, and that all adverse claims of the defendant be adjudicated. The defendant, answering, denied the material allegations of the complaint, and averred that defendant was the owner of the upland bordering on the land described in plaintiff's complaint. Defendant further averred its title to lots 2, 3 and 4 of section 1, township 6 north, range 2 west of the Willamette meridian, in Columbia County, Oregon; that since September 28, 1864, the date of the patent issued to John and Margaret Frye, defendant's predecessors in interest, the Columbia River has moved eastwardly, causing a large body of accretions gradually to form in front of defendant's property, and that plaintiff, by his suit, was seeking to divest the upland owner of its accretions to the mainland and the shore rights appurtenant thereto. Plaintiff replied, putting in issue the defendant's affirmative allegations. On the trial, the court adjudged:

"That the plaintiff is the owner of and is entitled to the possession of all the tide-lands lying east of and fronting and abutting on section 1, township 6 north, range 2 west, Willamette meridian, existent on December 31, 1883, or now existent, which lie south of point 'D' located by the survey of Thomas S. Wilkes, which survey was filed with the State Land

Board of the State of Oregon with the application of S. G. Caudle to purchase said land and also all accretions thereto.''

The defendant appeals and assigns error, in this: that the court erred in decreeing in favor of the plaintiff and against the defendant, for the reason that the plaintiff failed to prove at the trial that the lands described in his complaint were tide-lands on December 31, 1883; further, because the plaintiff failed to identify with reasonable certainty any particular lands as being tide-lands on December 31, 1883, and for the additional reason that the court was without jurisdiction to enter any decree in this cause other than a decree dismissing plaintiff's complaint for want of jurisdiction.    AFFIRMED.

For appellant there was a brief and oral argument by *Mr. C. L. Whealdon.*

For respondent there was a brief over the names of *Messrs. Dey, Hampson & Nelson* and *Mr. G. L. Buland,* with an oral argument by *Mr. A. A. Hampson.*

BROWN, J.—This suit is brought in conformity with the provisions of Section 516, Or. L., reading:

"Any person claiming an interest or estate in real estate not in the actual possession of another may maintain a suit in equity against another who claims an interest or estate therein adverse to him, for the purpose of determining such conflicting or adverse claims, interests, or estates.''

The plaintiff aptly states in his brief:

"At the outset, kindly disabuse your minds of the idea that the case involves complicated questions in tide-lands or riparian rights.''

The law of this case is well settled in our jurisdiction. The real questions presented by the record are questions of fact. This applies to the jurisdiction of the court, which has been challenged by the defendant, and the character of the land mentioned in the deed to one S. G. Caudle at the date of its conveyance, together with its location and identity.

The first point to determine is one of jurisdiction. Without jurisdiction, the Circuit Court possessed no authority to hear and determine this legal controversy: *Sprague* v. *Astoria,* 106 Or. 253 (204 Pac. 956, 206 Pac. 849).

In order to confer jurisdiction upon the court under the terms of the section of the Code quoted, the plaintiff averred, among other things, that the real property, title to which is in controversy, "is not in the actual possession of any one other than the plaintiff." The defendant denied that allegation. It then became necessary for the plaintiff to establish the issue thus made.

1. The defendant, in its appeal, asserts that there was no evidence to prove the allegation relating to the possession of the premises. A failure to allege and prove that no person other than plaintiff was in possession of the lands involved is fatal to his case. This appears conclusively from the language of the section itself as set out above. Also see *Comegys* v. *Hendricks,* 55 Or. 533 (106 Pac. 1016); *Hodgkin* v. *Boswell,* 57 Or. 88 (110 Pac. 487).

We have read the record with great care, to ascertain whether or not the plaintiff has proved his allegation that the property is not in possession of any person other than himself. There is no direct evidence relating to the matter. The testimony of no single witness establishes possession, or want of

possession, of the lands in controversy. But from a perusal of all the evidence in the record, including exhibits composed of pictures, drawings and maps, we are convinced that the lands are not in possession of any person. We draw this inference from facts, as a whole, proved at the hearing. Moreover, the pictures, blue-prints and maps, taken in connection with the testimony, tell us that these lands are uncultivated, wild and unoccupied, and not in the possession of any person.

On August 20, 1883, one S. G. Caudle filed with the board of commissioners of the State of Oregon, in the manner provided by law for the sale of school and university lands and other lands, his application to purchase from the State of Oregon certain real property situate in Columbia County, and particularly describing the same, which was accompanied by a survey made and verified by Thomas L. Wilkes, county surveyor of Columbia County, Oregon. Following the filing of the application, accompanied by the survey of the county surveyor, as provided by law, the State of Oregon, through its board of commissioners hereinbefore referred to, on December 31, 1883, conveyed to Caudle, the applicant, by a deed of that date, the following:

All the tide-lands east of and fronting and abutting on section 1, township 6 north, range 2 west of the Willamette meridian, containing 13.36 acres, more or less.                                          .

David Hardy, plaintiff herein, by mesne conveyance, thereafter acquired the right, title and interest of Caudle, and of this state, to the lands described therein.

The California Trojan Powder Company, a corporation, owns lands bordering on the Columbia River

that adjoin the alleged tide-lands the title to which Hardy seeks to have quieted by his suit.

2, 3. The burden is upon the plaintiff in this suit, if he would have his title quieted, to show that on December 31, 1883, the date on which the land was sold and conveyed by the state, there was in existence tide-land to which the language of the deed applied. The deed must describe the land with sufficient certainty to enable a competent surveyor to establish the boundary lines of the tide-lands conveyed by the state to Caudle: *House* v. *Jackson,* 24 Or. 89 (32 Pac. 1027); *Bogard* v. *Barhan,* 52 Or. 121 (96 Pac. 673); *St. Dennis* v. *Harras,* 55 Or. 379 (105 Pac. 246, 106 Pac. 789).

4. "Tide-land" is a descriptive phrase applied to lands covered and uncovered by the ordinary tides, and has frequently been defined by this court: *Hinman* v. *Warren,* 6 Or. 408; *Andrus* v. *Knott,* 12 Or. 501, 503 (8 Pac. 763); *Elliott* v. *Stewart,* 15 Or. 259, 261 (14 Pac. 416); *Van Dusen Inv. Co.* v. *Western Fishing Co.,* 63 Or. 7 (124 Pac. 677, 126 Pac. 604); *Bay City Land Co.* v. *Craig,* 72 Or. 31 (143 Pac. 911). In the case last cited, Mr. Justice RAMSEY quotes many definitions of that term. In *Andrus* v. *Knott, supra,* this court held that the term "tide-lands" applies to lands covered and uncovered by the tides, which the state owns by virtue of its sovereignty, and corresponds with the shore or beach, which at common law is that land lying between ordinary high and low water mark.

The record shows that at the trial of this cause a stipulation was entered into whereby the chain of title of each of the parties to this litigation was admitted. The plaintiff introduced in evidence the original survey of the tide-land made by Thomas L.

Wilkes, county surveyor of Columbia County, which was filed with the board of commissioners of the State of Oregon. Wilkes gave testimony relating to the character of the land described in the deed at the time of his survey, and to the accuracy of such survey. He testified that when he surveyed the 13.36 acres of land in the first instance, he worked the entire day and until late at night; that he located the boundaries of the tide-land and determined the acreage thereof; that, in determining the acreage, it was necessary for him to locate the high-water mark and the low-water mark, and that he did so. His testimony demonstrates that he knew what constitutes "tide-lands."

W. C. Nicholas, civil engineer, testified that he specializes in surveying, and that he made a survey of a tract of land lying along the Columbia River, bounded, in a general way, on the north by a promontory near Coffin Rock and on the south by the section line of section 1. He testified:

"I located from the original government field-notes the meander line of the Columbia River, which is the east line of the Frye donation land claim, or of section 1. * * Then, I also located the line surveyed by Wilkes of the tide-land, the west line of the tide-land as surveyed by Wilkes from his notes."

His testimony corroborates that of Wilkes as to the location of the land described in the deed.

C. W. Woodruff, a civil engineer of considerable experience, testified that he was familiar with the tract of land located on the Columbia River bounded on the north by Coffin Rock and on the south by the Broughton & Wiggins docks; that in 1911 he was employed by Anthony Hardy to make a survey of the land to re-establish the boundaries according to the description in the deed, and that he was able to

do so; that he made an actual survey on the ground, and reduced the result of his work, in part, to the form of a map. This map prepared by him was introduced in evidence and marked "Plaintiff's Exhibit 2."

A number of witnesses testified concerning the lands fronting on lots 1, 2, 3 and 4 referred to. This testimony has not been of great assistance.

5. We have carefully read the oral testimony and studied the maps, including that made by L. J. Orshoven. From the whole of the evidence, we conclude that there was, at the time of the execution of the deed, at least 13.36 acres of tide-lands in front of the lots referred to; that these lands were conveyed to plaintiff's predecessors in interest, and that they have been identified and definitely located by the testimony in this suit.

This case is affirmed.                    Affirmed.

Bean, Harris and Rand. JJ., concur.