ADAMS and others *v.* ORE KNOB COPPER Co. and others.

*(Circuit Court W. D. North Carolina.* April, 1880.)

1. ESTATE IN FEE—DEED WITHOUT CONSIDERATION—NORTH CAROLINA.
    A simple deed of grant, without consideration, is sufficient to pass an estate in fee-simple under the statutes of North Carolina.

2. ESTATE UPON CONDITION—PERFORMANCE OF CONDITION.
    Where the performance of a condition subsequent, to be performed by the grantees "at their own time and convenience," is the sole consideration for the grant of a conditional estate, such condition must be performed within a reasonable time.

3. SAME—SAME.
    In such case, where compliance with the condition requires a continuous performance, and such performance is discontinued, the same must be resumed in a reasonable time in order to prevent a forfeiture of the estate.

4. SAME—FORFEITURE.
    In such case, if the grantor or his heirs are in possession, upon a breach of the condition, the estate will revest in them at once, without any formal act on their part.

5. SAME—WAIVER.
    Mere silent acquiescence in an act which constitutes a breach of an express condition does not amount to a waiver of the right of forfeiture for such breach.—[ED.

This civil action was originally commenced in the state superior court for Ashe county, to recover the possession of the minerals and metals in a certain tract of land described in the complaint. The pleadings and proceedings are in conformity to the state Code of Civil Procedure. Under this

Code the distinctions between actions at law and suits in equity are abolished, and the civil action is adopted as the form of action for the enforcement or protection of private rights and the redress of private wrongs; and in such action all the rights of the parties, either plaintiff or defendant, in law or in equity, can be ascertained and adjusted in one suit. The relief demanded by the plaintiffs in their complaint is to be put in possession of the premises described, so that they may dig for and obtain the minerals and metals to which they allege they are entitled under the grant set forth in the pleadings; and also to have an account taken of the large rents and profits received by the defendant corporation in working the mines for a number of years. The plaintiffs are the heirs at law of the grantees, and the grant under which they claim is as follows:

*State of North Carolina, Ashe County.*

Know all men by these presents: That we, John L. Miller and George E. Miller, of the county of Ashe and state of North Carolina, do this day grant and convey unto James Calloway, of Wilkesboro, North Carolina, his heirs and assigns; to B. C. Calloway, of Ashe county, North Carolina, his heirs and assigns; to Thomas S. Calloway, of Ashe county, North Carolina, his heirs and assigns; and to Calloway, Cummings & Co., of the county of Knox and state of Tennessee, their heirs and assigns, forever, all the mineral and metallic interest on the following-described lands, lying and being in the county of Ashe and state of North Carolina, on the waters of Peak creek and Roans creek, the waters of the South Fork of New river, contained in three several tracts, all adjoining, to-wit: * * on the following terms and conditions, to-wit: that the said James Calloway, B. C. Calloway, Thomas S. Calloway, and Calloway, Cummings & Co. shall, at their own convenience and time, and at their own proper expense, make a fair test for minerals and metals on the aforesaid lands, and if, after said test has been made, any valuable minerals or metals shall be found worth working on said premises, to work it or cause the same to be done, and to pay over to the aforesaid John L. Miller, his heirs and assigns, and to the said George E. Miller, his heirs and assigns, jointly, the one-fourth part of the net profits of the said minerals and metals.

The said James Calloway, his heirs and assigns; B. C. Galloway, his heirs and assigns; and Thomas S. Calloway, his heirs and assigns,—shall have, *have* each one-seventeenth part of the net *remaing* three-fourths of minerals and metals on the aforesaid lands. The remaining fourteen-seventeenths of the said three-fourths of net profits are to go to the said Calloway, Cummings & Co., their heirs and assigns. Said Calloway, Cummings & Co. are to pay the expense of testing the aforesaid property. And, further, said John L. Miller and George E. Miller, their heirs and assigns,

grant unto the said James Calloway, B. C. Calloway, Thomas S. Calloway, their heirs and assigns, Calloway, Cummings & Co., their heirs and assigns, forever, all the necessary mining privileges on the aforesaid lands, right of way, wood, and water, together with the right of occupancy of the necessary portions of said lands as may be necessary for the erection of buildings and residences for the accommodation of all such persons as may be engaged in operating and carrying on said mines and their necessary business, together with all the necessary appurtenances, without let or hindrance, thereto belonging or in anywise appertaining: *provided*, the said James Calloway, B. C. Calloway, Thomas S. Calloway, Calloway, Cummings & Co., their heirs and assigns, interfere as little as may be with the farming privileges of the said lands.

In testimony whereof we have hereunto set our hands and seals this ninth day of November, A. D. 1854

| | | |
|---|---|---|
| [Signed] | JNO. L. MILLER. | [Seal.] |
| [Signed] | GEORGE E. MILLER. | [Seal.] |

Signed, sealed, and delivered in the presence of
  WILLIAM HARRIS,
  WILLIAM MILLER.

The execution of this grant is admitted by the defendants in the pleadings; but they insist that it was procured by the fraudulent misrepresentations of the grantees, and, also, that at the time of the execution it was falsely read to the grantors, John T. Miller and George E. Miller, two of the present defendants. The defendants further insist that the said grant only conveyed an incorporeal hereditament—the privilege of digging for minerals and metals—and they are not entitled to the specific relief demanded in the complaint. The defendants further insist that the grant contains a condition subsequent which has not been performed, and the estate conveyed became void by reason of the failure to perform said condition; and as the grantors were in full possession of the premises at the time of said breach, the estate at once became revested in them, and they had full power to convey to the defendant corporation in 1873.

Several other defences were set forth in the pleadings which need not be stated, as they were not considered in the trial of the case.

After the pleadings were filed in the state court the case was removed into this court upon the petition of "The Ore Knob Copper Company," a non-resident defendant, acting under a charter obtained from the state of Maryland.

It was conceded by the counsel on both sides that the strictly equitable rights of the parties could not be considered and disposed of in an action at law in a federal court, where the systems of law and equity are separate and distinct as to jurisdiction, and as to the forms and modes of procedure in administering justice.

The court informed the counsel that arguments would be heard as to the legal rights of the plaintiffs under this grant, and then proper issues would be found and submitted to a jury to ascertain the material facts on this part of the case. The other issues of fact presented in the pleadings would be reserved for future consideration, if they become necessary.

*Clemment, Furches & Linney,* for plaintiffs.

*Folk, Cilley, McCorkle, Armfield & Smith,* for defendants.

DICK, D. J., (*in response to the arguments of counsel.*) I have listened with pleasure, and have been much interested in and benefited by the able and elaborate arguments of the counsel in this case. They have discussed legal questions which are not of frequent occurrence in the courts, and I am pleased to find that they are so familiar with the old learning of the common law.

In determining the questions which I regard as material at this stage of the case, it is not necessary for me to consider and decide many of the intervening points presented in the arguments. These points may become material if the jury should determine the issues of facts to be submitted in favor of the plaintiffs. I am of opinion that part of the plaintiffs, under the grants set forth in the pleadings, acquired a fee-simple interest in the minerals and metals in the lands described, and also the privilege of using said lands, as far as necessary, for the purposes specified in the grant. In England since the act 8 and 9 Vict., and in this state since the act of 1715, freehold interests in lands may be conveyed by a simple deed of grant, and it is not necessary to use livery of seizin, or deeds with sufficient consideration to operate under the statute of uses. In this state such grant, duly executed and registered, will be valid, and pass a freehold estate in lands, even without a consideration, if it does not

come in conflict with the rights of creditors and subsequent purchasers.

The continuance of the estate conveyed to the grantees, in the grant before us, was dependent upon the performance of the condition subsequent expressed in the grant. By the terms of the condition it was to be performed by the grantees "at their own convenience and time." As the grantors derived no immediate benefit in consideration of the grant, and were to receive profits only upon the performance of the condition, it was the duty of the grantees to perform the condition subsequent in a reasonable time. What a *reasonable time* is the law does not accurately define, but leaves that question to be decided by the judge according to the facts and circumstances of a case, as admitted by the pleadings or as ascertained by the finding of a jury. As the evident intention and motives of the grantors, in executing the grant without any present consideration, were that they might receive continuous profits from the working of the minerals and metals in the lands, the obligation of the grantees was continuous; and if they failed to open the mines, or discontinued to work them when opened, and did not resume operations in a reasonable time, their estate, under the grant, would be forfeited by this breach or non-performance of the condition subsequent contained in the grant.

The doctrines of estates upon condition seem to have been originally derived from the feudal law. A tenant was under obligation to render continuous service, and if he neglected to perform his service the lord could, by a writ of *cessavit*, obtain possession of the fief, as such continuous service was the consideration for the grant of the estate.

It was insisted, on the part of the plaintiffs, that at the common law the breach of a condition subsequent did not absolutely determine the estate; that a freehold could only be defeated by an entry or claim made on the part of the grantor or his heirs, and until that was done the estate lost none of its original qualities and incidents, and that this right of entry or claim could not be assigned to a stranger to the conveyance. It was also insisted in the argument that,

in a conveyance like the one now before the court, there should be a clause providing for a *cesser* of the estate, and reserving a right of re-entry for a breach of the condition in order to enable the grantor to avail himself of a forfeiture for a breach.

It is a well-settled rule of the common law that the breach or non-performance of a condition annexed in the grant of a freehold estate does not cause an immediate *cesser* of the estate without a re-entry or claim by the grantor or his heirs, for the purpose of enforcing a forfeiture, although the grant may contain express words declaring it *ipso facto* void. As a freehold, at the common law, could only be created by the notoriety of livery of seizin, there was needed a corresponding notoriety in order to determine it. This rule was not applicable to estates for years, as they commenced without livery of seizin, and could determine without re-entry. As, under the statutes of uses, devises, and grants, the ceremony of livery of seizin is dispensed with in the creation of freehold estates, it would seem that the ceremony of re-entry for the breach or non-performance of a condition ought to be dispensed with; but the old rule of the common law is still preserved, upon the principle that an estate commenced by a solemn act, viz., a grant, must be defeated by an act equally solemn, upon the maxim of the common law, *eo ligamine quo ligatur.*

At the common law there is a distinction between a condition that defeats an estate but requires a re-entry, and a limitation or condition in law that determines the estate without entry. Words of limitation circumscribe the continuance of the estate and mark the period which determines it. Under certain conveyances, owing their existence to the statutes to which we have above referred, in which livery of seizin is dispensed with in the creation of freehold estates, a condition may be annexed to such estate, and upon a breach of the same the estate will immediately cease as to the first taker and pass over to a third person, to whom limited, and take effect in possession without entry. It is not necessary for me to consider these doctrines of limitations and conditional limitations, as the terms of the grant before us are in

words of express condition, which render the estate liable to be defeated before its determination, and return to the grantors and their heirs, and not pass over to a third party. In such a case the rules of the common law require a grantor or his heirs, on the breach of a condition, to make entry or claim before they can sustain an action of ejectment to recover·possession of the forfeited estate; for when the grantor conveyed his estate he parted with the seizin, which he or his heirs can only regain by an actual re-entry or claim made for the purpose of enforcing the forfeiture. Upon re-entry or claim the grantor or his heirs become seized of the estate had at the time of making the grant upon condition, freed from any subsequent lien, encumbrance, or limitation. If the grantor or his heirs were in possession of the premises. when the breach of the condition occurred, the estate re-vested in them at once, without any formal act on their part, and they were presumed after the breach to hold for the purpose of enforcing a forfeiture, unless they waived the breach by some acts showing an intention to continue the estate of the grantee. Mere silent acquiescence in an act which had constituted a breach of an express condition would not amount to a waiver of the right of forfeiture for such breach.

In our case the grantors remained in possession of the premises from the date of the execution of the grant, and in 1873 alienated the same to the defendant corporation; and it is a question of fact, to be determined by a jury, whether they did any act amounting to a waiver of any breach of condition on the part of the first grantors.

In the books upon the subject of estates upon condition, there are many nice constructions of the courts as to what words make a condition with a clause of re-entry, or without such clause expressed in the deed. This learning has been elaborately presented in the argument, but it is unnecessary for me to consider the question to much extent, as it is well settled that where there are express words in a deed, which of themselves make a condition, (as in this case, "on the following terms and conditions,") there is no need of

a clause reserving the right of re-entry for a breach thereof, in order to enable a grantor to avail himself of a forfeiture.

In this case, as it is stated in the pleadings and conceded in the argument that the defendant grantors remained in possession of the premises in controversy, I am of the opinion that they became revested with the estate conveyed if there was a breach of the condition expressed in the grant, unless they did some act which waived the forfeiture occasioned by such breach. Proper issues may be framed to enable the jury to ascertain from the evidence and find by their verdict whether there was a breach of the conditions expressed in the grant, and whether there was a waiver of such breach on the part of the grantors. The court will instruct the jury upon the question of reasonable time in the performance of the conditions.

The jury being empanelled, it was conceded by both parties that the grantees did some work on the premises, in making explorations for minerals and metals, in the year 1854, and had done no work since that time.

The jury, after the charge of the court, returned a verdict for the defendants.